UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| DAVID OLIVO,[1] | ) |
| | ) |
| Plaintiff | ) |
| | ) |
| vs. | ) CAUSE NO. 2:12-CV-509 RLM |
| | ) |
| CAROLYN W. COLVIN,[2] | ) |
| COMMISSIONER OF SOCIAL | ) |
| SECURITY, | ) |
| Defendant | ) |

OPINION AND ORDER

David Olivo seeks judicial review of the final decision of the Commissioner of Social Security denying his applications for disability insurance benefits and Supplemental Security Income under the Social Security Act, 42 U.S.C. §§ 423 and 1381 *et seq.* The court has jurisdiction over this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). For the reasons that follow, the court affirms the Commissioner's decision.

Mr. Olivo contends that he has been disabled since July 8, 2009 as a result of various physical and mental impairments. His applications for benefits were denied initially, on reconsideration, and after an administrative hearing in September 2011. Mr. Olivo was represented by counsel at the hearing and on appeal.

---

[1] The plaintiff's last name appears to have been misspelled in the complaint, and has been corrected to reflect the spelling used throughout the administrative record.

[2] Carolyn W. Colvin, the Acting Commissioner of Social Security, has been substituted as the named defendant, pursuant to Fed. R. Civ. P. 25(d)(1).

In evaluating Mr. Olivo's disability claim, the ALJ considered the documentary evidence presented at the administrative hearing and testimony from Mr. Olivo and a vocational expert, Richard T. Fisher. Applying the agency's standard five-step analysis, 20 C.F.R. § 404.1520, the ALJ found that Mr. Olivo:

(1) had not engaged in substantial gainful activity since July 8, 2009;

(2) had severe physical and mental impairments, including disorders of the spine, bipolar disorder, depressive disorder, and generalized anxiety disorder;

(3) didn't have an impairment or combination of impairments that met or equaled the severity of any impairment listed in 20 C.F.R. Part 404, Subpt. P, App. 1, specifically Listings 1.04, 12.04, and 12.06;

(4) had the residual functional capacity to perform a very limited range of sedentary work,[3] and was unable to perform his past relevant work as a forklift operator;

(5) but could perform other jobs that existed in significant numbers in the national economy given his age, education, work experience, and residual functional capacity, including, but not limited to: ampoule sealer (1,050 jobs in Indiana and 21,000 nationally), microfilm document preparer

---

[3] The ALJ found that Mr. Olivo's was capable of performing sedentary work if he could "briefly alternate positions after being seated for thirty (30) minutes," and the work involved simple, routine, and repetitive tasks, decision making, and judgment; occasional and limited changes in work setting in terms of the work place, work processes, or products; no direct interaction with the public; and no "tandem tasks [with co-workers]...where each member of the team's job performance depends upon the performance of [another] member of the team." [AR at p. 31].

(1,400 jobs in Indiana and 6,600 jobs nationally), or para-mutual ticket checker (1,400 jobs in Indiana and 69,000 jobs nationally). The ALJ therefore concluded that Mr. Olivo was not disabled within the meaning of the Act, and was not entitled to benefits.

When the Appeals Council denied Mr. Olivo's request for review, the ALJ's decision became the final decision of the Commissioner of Social Security. Jones v. Astrue, 623 F.3d 1155, 1160 (7th Cir. 2010). This appeal followed.

Mr. Olivo contends the ALJ's assessment of his credibility and residual functional capacity aren't supported by substantial evidence, and that his findings at step five are flawed because the jobs identified by the vocational expert don't exist in "significant" numbers, as that term is defined in Beltran v. Astrue, 700 F.3d 386 (9th Cir. 2012). He asks the court to either reverse the Commissioner's decision and award benefits, or remand the case for further proceedings.

I. *Standard of Review*

The issue before the court isn't whether Mr. Olivo Bush is disabled, but whether substantial evidence supports the ALJ's decision that he is not. Scott v. Astrue, 647 F.3d 734, 739 (7th Cir. 2011); Nelms v. Astrue, 553 F.3d 1093, 1097 (7th Cir. 2009). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401 (1971); Jones v. Astrue, 623 F.3d 1155, 1160 (7th Cir. 2010). In reviewing the ALJ's decision, the court can't reweigh the evidence,

make independent findings of fact, decide credibility, or substitute its own judgment for that of the Commissioner, Simila v. Astrue, 573 F.3d 503, 513 (7th Cir. 2009); Powers v. Apfel, 207 F.3d 431, 434-435 (7th Cir. 2000), but it "will conduct a critical review of the evidence, considering both the evidence that supports, as well as the evidence that detracts from, the Commissioner's decision." Briscoe v. Barnhart, 425 F.3d 345, 351 (7th Cir. 2005). While the ALJ isn't required "to address every piece of evidence or testimony presented, he must provide a 'logical bridge' between the evidence and the conclusions so that [the court] can assess the validity of the agency's ultimate findings and afford the claimant meaningful judicial review." Jones v. Astrue, 623 F.3d at 1160.

## II. *Analysis*

Mr. Olivo contends that the findings regarding his credibility and residual functional capacity were flawed because the ALJ: used boilerplate language, *see* Bjornson v. Astrue, 671 F.3d 640 (7th Cir. 2012); Parker v. Astrue, 597 F.3d 920, 922 (7th Cir. 2010); discredited Mr. Olivo's testimony simply because it wasn't supported by objective medical evidence and failed to follow agency regulations and rulings in evaluating subjective complaints of pain, citing Carradine v. Barnhart, 360 F.3d 751, 753 (7th Cir. 2004) and 20 C.F.R. § 404.1529; and failed to consider medical evidence that showed that he was incapable of sedentary work as a result of "uncontrollable" pain, specifically the medical records from Dr. Nikola Nenandovich, the orthopedic surgeon who treated him after he injured his

4

back in July 2009, and Dr. Daniel Cha, the pain specialist who treated Mr. Olivo from September 2010 to July 2011 [AR 302-07, 315, 398-99 and 405].

The ALJ's credibility determination is entitled to great deference, and can be be overturned only if it is "patently wrong." <u>Shideler v. Astrue</u>, 688 F.3d 306, 310-11 (7th Cir. 2012); <u>Prochaska v. Barnhart</u>, 454 F.3d 731, 738 (7th Cir. 2006). Mr. Olivo hasn't made that showing.

Mr. Olivo testified that:

- he couldn't lift anything heavier than a gallon of milk or a twelve-pack of pop;

- he could stand for no more than twenty to thirty minutes;

- he needed to move around constantly to avoid numbness in his legs;

- he couldn't sit any longer than twenty to twenty-five minutes;

- he could walk for only ten to fifteen minutes;

- he would need to lie down for three to four hours out of an eight hour work day;

- back pain affected his ability to breathe, twist, and turn;

- sitting caused numbness in his hands and legs;

- he couldn't walk when his legs were numb; and

- he had difficulty lifting, squatting, bending, reaching, kneeling, climbing stairs, and using his hands.

The ALJ found Mr. Olivo's subjective complaints to be only partially credible, and found that Mr. Olivo retained the ability to perform limited sedentary work, which

5

is defined as the ability to occasionally lift ten pounds, stand and/or walk for up to two hours in an eight-hour work period, and sit for up to six hours in an eight-hour work period. 20 C.F.R. § 404.167 and Social Security Ruling 83-10.

The ALJ did use disfavored boilerplate language in his decision, when he stated that, "the claimant's medically determinable impairments could reasonably be expected to cause the alleged reported symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these alleged symptoms are not credible to the extent they are inconsistent with [his] residual functional capacity assessment." [AR at 32]. But his findings and conclusions about to Mr. Olivo's credibility didn't stop there. The boilerplate language is followed by a detailed discussion of the factors considered, the ALJ's reasons for finding that Mr. Olivo's subjective complaints were only partially credible, and the evidence supporting those findings and conclusions. See Decision at pages 7-11 [AR at 32-36].

The ALJ considered the factors set out in Social Security Ruling 96-7p and 20 C.F.R. §§ 404.1529 and 416.929 — work history, medical evidence, treatment, medications taken and side effects related to those medications, and statements regarding the claimant's activities of daily living — and found that Mr. Olivo's subjective complaints of disabling pain lacked credibility because they were inconsistent with the other evidence of record, including:

(1) Reports from Dr. Nenadovich and a physical therapist which showed that Mr. Olivo had been diagnosed with mild degenerative disc

6

disease and bulging discs following a work-related injury in July 2009 and was restricted to light duty (no lifting or carrying more than ten pounds, no repetitive bending or twisting, and no prolonged sitting greater than thirty minutes) in August 2009; received steroid injections for pain in August, September, October and November; attended only five physical therapy sessions before cancelling or failing to show; had no deficits in strength in September 2009; walked with a symmetric gain, was neurologically intact, showed discomfort only with extreme range of motions, had reached maximum medical improvement, and was released from Dr. Nenadovich's care in November 2009, with the following restrictions: no repetitive bending or twisting, no lifting greater than thirty pounds, and no pushing or pulling greater than forty pounds (Exhs. 2F, 3F, 17F, and 23F);

(2) Mr. Olivo's work history — records showed that he had been treated for back pain before the work related injury in July 2009, and continued to work before and after the injury (Exhs. 3F, 4F, 6D);

(3) The eight to ten month gap in treatment between Mr. Olivo's release from Dr. Nenadovich's care (November 2009) and his treating with Dr. Cha for pain management (September 2010) — shortly after his applications for benefits were denied in August 2010;

7

(4) Consulting physician Shoucair's August 2010 examination, which showed that Mr. Olivo could walk without the use of an assistive device, had full range of motion and good muscle strength in the upper extremities and the left lower extremity, decreased muscle strength and tone in the right lower extremity, good grip strength, the ability to perform fine and gross movements on a sustained basis, and the ability to sit, stand, walk, handle objects, hear, see, and speak (Exh. 8F);

(5) An MRI in May 2011 that showed no evidence of fracture, subluxation, or nerve root compression, and only mild disk-osteophyte complex at the L4-L5 level, which caused moderate right neural foraminal stenosis without central or left neural foraminal stenosis (Exh. 22F); and

(6) Mr. Olivo's own statements to Dr. Cha in June 2011, about the positive effects of his new medication (Oxycontin), and the absence of any side effects (Exh. 23F).

The law requires nothing more than this sort of explanation. *See* Filus v. Astrue, 694 F.3d 863, 868 (7th Cir. 2012) (the use of boilerplate language doesn't require reversal if the ALJ "otherwise explain[s] his conclusion adequately" and offers "reasons grounded in the evidence...."); *see also* Shideler v. Astrue, 688 F.3d 306, 311-312 (7th Cir. 2012); Getch v. Astrue, 539 F.3d 473, 483 (7th Cir. 2008).

Mr. Olivo contends that medical records from his treating physicians, Drs. Nenadovich and Cha, show he's incapable of sedentary work due to "uncontrollable" pain. [AR 302-307, 315, 398-99, and 405] But the ALJ discussed the medical evidence in great detail in his decision, and found that it didn't support Mr. Olivo's claims of disabling pain or a finding of limitations beyond those found in his decision. Mr. Olivo hasn't challenged the weight accorded to his physicians' statements, and the court can't reweigh that evidence, make independent findings of fact, decide credibility, or substitute its own judgment for that of the Commissioner. Simila v. Astrue, 573 F.3d 503, 513 (7th Cir. 2009); Powers v. Apfel, 207 F.3d 431, 434-435 (7th Cir. 2000).

Mr. Olivo's assertion that the ALJ's findings at step five are flawed because the jobs identified don't exist in "significant" numbers is inconsistent with the vocational expert's unopposed testimony and controlling case law. *See* Liskowitz v. Astrue, 559 F.3d 736, 743 (7th Cir. 2009) ("[a]s few as 174 jobs has been held to be significant, and it appears to be well-established that 1,000 jobs is a significant number"); Lee v. Sulllivan, 988 F.2d 789, 794 (7th Cir. 1993) (rejecting appellant's argument that 1,400 was not a "significant number" of jobs).

III.  *Conclusion*

The ALJ's credibility and residual functional capacity determinations are supported by substantial evidence and detailed findings linking that evidence to the ALJ's conclusions, as are his findings at step 5 of the sequential evaluation.

9

Accordingly, the final decision of the Commissioner of Social Security is AFFIRMED.

SO ORDERED.

ENTERED:   March 31, 2014   

               /s/ Robert L. Miller, Jr.      
Judge
United States District Court